ETHEL RICHARDS, complainant,

*v.*

CHARLES R. RICHARDS, defendant.

[Decided March 19th, 1936.]

*Mr. Arthur L. Hurst,* for the petitioner.

*Mr. John J. Flaherty, Jr.,* for the respondent and cross-petitioner.

GROSMAN, A. M.

This matter is before the court on the application of the complainant to forfeit a *ne exeat* bond in the sum of thirty-five hundred dollars ($3,500), given by the defendant, Charles R. Richards, deceased, as principal, and John J. Flaherty, Jr., as surety; as well as on the cross-application of the surety to vacate said bond and exonerate him thereon because of the death of said Charles R. Richards. The complainant concedes the death of said principal, but urges a forfeiture of the bond because his death was self inflicted, the principal having committed suicide.

Complainant in the first instance initiated a suit in this court against the defendant for separate maintenance by suing out a writ of *ne exeat* under which the defendant entered into a bond conditioned as provided by rule 216 of this court, namely:

"That he shall cause his appearance to be entered in said suit and continue such appearance by a solicitor of this Court, residing in this State; and shall at all times render himself amenable to the orders

and processes of this Court pending the suit, and to such other processes as shall be issued to compel the performance for the final decree therein, when so required by order of this Court."

The respondent, John J. Flaherty, Jr., became surety thereon and deposited the sum of thirty-five hundred dollars ($3,500) in cash, with the sheriff of Atlantic county to secure the performance of his obligation. The bond was executed the 24th day of November, 1933, and thereafter, until his death on July 25th, 1935, the defendant lived up to all his obligations thereunder. The issue here presented is whether the suicidal death of the principal warrants a forfeiture of said *ne exeat* bond, or a cancellation thereof, and the exoneration of the surety.

The proposition is without precedent in this state, so far as I have been able to ascertain. This is all the more remarkable because of the antiquity of this writ. Long before the establishment of the American colonies, the English courts made common use of this process, it then being designated as the "writ of *ne exeat regno*," while under our practice it is known as the "writ of *ne exeat republica*." In an anonymous English case reported in *1 Atk. 521,* it was held that "the writ of *ne exeat regno* was originally confined to state affairs, but is now very properly used in civil cases." Perhaps the very antiquity of this writ and its thorough entrenchment in our equity jurisprudence is responsible for the dearth of judicial decisions in this state pertaining to the obligations of parties to bonds given thereunder.

In the case of *Penny* v. *Penny, 88 N. J. Eq. 160; 102 Atl. Rep. 257,* Backes, V. C., held that:

"Bonds conditioned to obey writs of *ne exeat* are in the nature of equitable bail, and the obligations of sureties are substantially the same as bail at common law."

This being so, we must have recourse to the decisions of our law courts for enlightenment upon the issue here presented. As far back as 1791 we find that the New Jersey Supreme Court, in the case of *Armstrong* v. *Davis, Bail of Carson,* 1 *N. J. L.* 130, *per curiam,* directed entry of an exonerature on a bail piece, upon the ground that the principal was dead.

In 1841 the supreme court, in the case of the *State* v. *McNeal, Crane & Huntsman, 18 N. J. Law 333,* directed the exoneration of sureties on a bail bond, after the same had been forfeited, because of the principal's death, holding that:

"This court may, by virtue of the incidental powers appertaining to its constitution and jurisdiction, grant relief to bail, on petition, when not restrained by public justice, where the default of the principal was occasioned by sickness or death."

To the same effect is the case of *State* v. *Traphagen, 45 N. J. Law 134,* where once again after the recognizance was forfeited, the court decree the exoneration of the sureties because of the death of the principal, Mr. Justice Scudder, speaking for the supreme court (at *p. 135*), holds:

"* * * the effort of the surety to secure the appearance, and thereby further the purpose of the law, was frustrated by the act of God. This should excuse the bail and stop this action against him. Where the performance of the condition of the recognizance is rendered impossible by the act of God, by the law, the obligee, or the conusee, a default is excused. Where the bail could not reasonably anticipate and prevent the default, and with proper diligence find and surrender his principal, after default, before death intervened to prevent it, a proper case is made for this court to relieve the surety, on petition."

It will be observed that in the cases of *State* v. *Traphagen, supra,* and *State* v. *McNeal et al., supra,* the court, upon proof of the principal's death, directed the entry of an exonerature on the bail piece after "the bail had become fixed by the default of the principal, before his death." This commendable zealousness on the part of our law courts to grant relief to bail where the defaut results from causes beyond the control of the surety, meets with ready approval on the part of this court, which from time immemorial has held "forfeitures to be abhorrent."

The gravamen of the complainant's argument for forfeiture is that the principal's death in the instant case was self induced; that by having taken his own life, he, by his own act, made compliance with the conditions of his bond

impossible. This reasoning, while intriguing, cannot be countenanced.

With one or two exceptions, which are immaterial to the issues here presented, death terminates the marital relationship and all obligations arising therefrom with the utmost finality. A forfeiture of a bond of this type cannot be predicated upon its occurrence, no matter how the demise of the principal may have been brought about, "death wipes the slate clean."

The application to forfeit the *ne exeat* bond will be denied. The application of the surety to vacate the bond and for the entry of an exonerature thereon will be granted, and the sheriff of Atlantic county will be directed to return the money deposited by the surety to him. Submit an order, on notice.